# EXHIBIT 1

# STATE OF NORTH CAROLINA

_____Mecklenburg_____ County

File No. 18 CVS 19826

Film No.

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name Of Plaintiff
JOHN E. GUENTHER

**VERSUS**

Name Of Defendant(s)
WELLS FARGO, BANK, N.A., and Does 1 through 100

## CIVIL SUMMONS
## TO BE SERVED WITH
## ORDER EXTENDING
## TIME TO FILE COMPLAINT

G.S. 1A-1, Rule 4

| TO: | TO: |
|---|---|
| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| Wells Fargo Bank, National Association 2626 Glenwood Avenue, Suite 550 Raleigh, NC 27608 | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or the plaintiff's attorney within thirty (30) days after you have been served with the complaint as authorized in the attached order. You may serve your answer by delivering a copy to the plaintiff or the plaintiff's attorney or by mailing a copy to one of them at his/her last known address.

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date 10-15-2018 | Time 2:25 ☐ AM ☒ PM |
|---|---|---|
| Michelle Gessner Law Offices of Michelle Gessner 435 East Morehead Street Charlotte          NC  28202 | Signature _Emily D. Simpson_ | |
| | ☐ Deputy CSC    ☐ Assistant CSC | ☒ Clerk Of Superior Court |

AOC-CV-102, Rev. 1/10
© 2010 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the Order were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of this Summons and Order.

☐ By leaving a copy of this Summons and Order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Summons and Order to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Service Accepted By Defendant

| Date Accepted | Time Served | ☐ AM ☐ PM | Signature |
|---|---|---|---|

☐ Other Manner Of Service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of this Summons and Order.

☐ By leaving a copy of this Summons and Order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Summons and Order to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Service Accepted By Defendant

| Date Accepted | Time Served | ☐ AM ☐ PM | Signature |
|---|---|---|---|

☐ Other Manner Of Service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Date Received | Name Of Sheriff |
|---|---|---|
| Paid By | Date Of Return | County |
| | | Deputy Sheriff Making Return |

AOC-CV-102, Side Two, Rev. 1/10
© 2010 Administrative Office of the Courts

**RECEIVED**

By Wells Fargo Legal Department at 10:19 am, Oct 23, 2018

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

FILED

2018 OCT 15 P 2: 2⸮

MECKLENBURG CO., C.S.C.

BY _____

File No.

18 CVS 19826

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name Of Plaintiff

JOHN E. GUENTHER

**VERSUS**

Name Of Defendant

WELLS FARGO BANK, N.A., and Does 1 through 100

**APPLICATION AND ORDER
EXTENDING TIME TO
FILE COMPLAINT**

G.S. 1A-1, Rule 3

---

**APPLICATION**

The undersigned requests permission to file a complaint in this action within twenty (20) days of any order granting this Application, as provided in Rule 3 of the Rules of Civil Procedure. The nature and purpose of the action are:

Name And Purpose Of The Action

Complaint alleging violations of:

1. Title VII Discrimination on the Basis of Sex/Gender
2. Wrongful Discharge in Violation of North Carolina's Public Policy
3. Defamation - Libel Per Se
4. Defamation - Libel Per Quod
5. Defamation - Slander Per Se
6. Defamation - Slander Per Quod
7. Breach of Express and/or Implied Contract
8. Unjust Enrichment
9. Equitable Estoppel

| Date | Signature | |
|---|---|---|
| 10-15-2018 | *L. michelle Gooner* | ☐ Applicant  ☒ Attorney For Applicant |

---

**ORDER**

The Court states that the nature and purpose of this action are as set forth above.

Therefore, it is ORDERED that permission is granted to the applicant to file a complaint in this action up to and including the date shown below.

| File Complaint On Or Before | Date Of Order |
|---|---|
| 11-05-2018 | 10-15-18 |
| *(Date must be within 20 days of date of Order.)* | Signature *A. Wi⸮* |
| | ☐ Assistant Clerk Of Superior Court  ☐ Clerk Of Superior Court |

**NOTE:** *Under Rule 3 of the Rules of Civil Procedure, upon entry of this Order, a summons shall be issued and the summons and a copy of this Order must be served in accordance with the provisions of Rule 4. A complaint must be filed in this action within the period provided above and that complaint must be served in accordance with the provisions of Rule 4 or by registered mail if the plaintiff so elects. If a complaint is not filed within the above period, the action shall abate.*

AOC-CV-101, Rev. 7/11
© 2011 Administrative Office of the Courts

(Over)

# FedEx press

ORIGIN ID:CWGA    (704) 734-7442
THE LAW OFFICES OF CHARLES G. PENNER
PA LAW OFFICE OF M. GREGORY HALD
43 EAST MOREHEAD STREET

CHARLOTTE, NC 28202
UNITED STATES US

TO  WELLS FARGO BANK, NA

    2628 GLENWOOD AVENUE, SUITE 550

    RALEIGH NC 27608
    (704) 734-7442      REF:

SHIP DATE: 18OCT18
ACTWGT: 0.50 LB
CAD: 111406024/INET4040

BILL SENDER



FedEx
TRK#  7734 8465 6968

SH RZZA

FRI – 19 OCT A4
EXPRESS SAVER



Extremely Urgent

STATE OF NORTH CAROLINA       IN THE GENERAL COURT OF JUSTICE
                                             SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG               18 - CVS - 19826

| | |
|---|---|
| JOHN E. GUENTHER, | ) |
| | ) |
|      Plaintiff, | ) |
| | )        **AFFIDAVIT OF SERVICE** |
| v. | ) |
| | ) |
| WELLS FARGO BANK, N.A., and Does | ) |
| 1 through 100, | ) |
| | ) |
| | ) |
|      Defendant. | ) |

That a copy of the Civil Summons and Order Extending Time To File Complaint were deposited with FedEx on October 16, 2018, for hand delivery to Defendant Wells Fargo Bank, N.A. at the address of their registered agent, Wells Fargo Bank, National Association.  Said copy of the Civil Summons and Order was in fact received and signed for by H. Hughes on October 19, 2018 at 8:37 a.m.  Attached here as Exhibit A is FedEx Signature page.

FURTHER, THE AFFIANT SAYETH NOT.

This is the 25th day of October, 2018.



L. Michelle Gessner
Michelle Gessner
NC State Bar No. 26590
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Telephone: (704) 234-7442
E-Mail: michelle@mgessnerlaw.com

Sworn and subscribed before me this the

25th day of October, 2018.

NOTARY PUBLIC

Virginia M. Wooten
5/22/21
My Commission Expires:

2

# EXHIBIT A

3

# FedEx®

October 22, 2018

Dear Customer:

The following is the proof-of-delivery for tracking number **773484656968**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | H.HUGHES | Delivery location: | 2626 GLENWOOD AVE 550 |
| | | | RALEIGH, NC 27608 |
| Service type: | FedEx Express Saver | Delivery date: | Oct 19, 2018 08:37 |
| Special Handling: | Deliver Weekday | | |
| | Adult Signature Required | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 773484656968 | Ship date: | Oct 16, 2018 |
| | | Weight: | 0.5 lbs/0.2 kg |

Recipient:
Wells Fargo Bank, NA
2626 Glenwood Avenue, Suite 550
RALEIGH, NC 27608 US

Shipper:
The Law Offices of Michelle Gessner
Law Offices of M. Gessner PLLC
435 East Morehead Street
Charlotte, NC 28202 US

Thank you for choosing FedEx.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **AFFIDAVIT OF SERVICE** was served upon the following via U.S. Mail:

Wells Fargo Bank, National Association
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

This the 25th day of October, 2018.

*L. Michelle Gessner*

L. Michelle Gessner
NC State Bar No. 26590
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Telephone: (704) 234-7442
E-Mail: michelle@mgessnerlaw.com
*Attorney for Plaintiff*

4



**THE LAW OFFICES OF**
**MICHELLE GESSNER** PLLC
435 East Morehead Street • Charlotte, NC 28202

CHARLOTTE
NC 282
25 OC
PM 3 1



NEOPOST          FIRST-CLASS MAIL
10/25/2018
US POSTAGE $000.47º



ZIP 28202
041M11272153

Wells Fargo Bank, NA
2626 Glenwood Avenue, Suite 550
Raleigh, NC  27608

27608-137025



## Notice of Service of Process

SKD / ALL
Transmittal Number: 18901306
Date Processed: 10/31/2018

| | |
|---|---|
| **Primary Contact:** | WF West - WF Bank<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |
| **Entity:** | Wells Fargo Bank, National Association<br>Entity ID Number  1329112 |
| **Entity Served:** | Wells Fargo Bank, N.A. |
| **Title of Action:** | John E. Guenther vs. Wells Fargo, Bank, N.A. |
| **Document(s) Type:** | Affidavit/Declaration |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Mecklenburg County General Court of Justice, NC |
| **Case/Reference No:** | 18 CVS 19826 |
| **Jurisdiction Served:** | North Carolina |
| **Date Served on CSC:** | 10/29/2018 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Regular Mail |
| Sender Information: | L. Michelle Gessner<br>704-234-7442 |
| **Client Requested Information:** | Matter Management User Groups: [Discrimination Employee] |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

FILED

**STATE OF NORTH CAROLINA**

**MECKLENBURG COUNTY**

**GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-19826**

JOHN E. GUENTHER,

    Plaintiff,

v

WELLS FARGO BANK, N.A., AND
DOES 1 THROUGH 100

    Defendants.

**STIPULATION FOR
EXTENSION OF TIME
TO FILE COMPLAINT**

IT IS HEREBY CONSENTED TO, STIPULATED AND AGREED, by and between Plaintiff John

Guenther and Defendant Wells Fargo Bank, N.A. that the time within which Plaintiff must serve

his Complaint is extended through and including January 31, 2019, in accordance with the

Tolling Agreement entered into by the parties.

This the 5th day of November, 2018.

Keith M. Weddington, NC State Bar No. 14352
keithweddington@parkerpoe.com
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
T: (704) 335-9035 F: (704) 335-9697

Michelle Gessner, NC State Bar No. 26590
michelle@mgessnerlaw.com
Law Offices of Michelle Gessner
435 East Morehead Street
Charlotte, North Carolina 28202
T: (704) 234-7442 F: (980) 206-0286

Case 3:19-cv-00328-MOC   Document 1-1   Filed 07/12/19   Page 13 of 46

FILED

2019 JAN 30 P 3: 25

MECKLENBURG CO...

BY...

**STATE OF NORTH CAROLINA**                           **GENERAL COURT OF JUSTICE**
                                                      **SUPERIOR COURT DIVISION**
**MECKLENBURG COUNTY**                                **18-CVS-19826**

JOHN E. GUENTHER,

    Plaintiff,

                                   **STIPULATION FOR**
v                                                     **EXTENSION OF TIME**
                                                      **TO FILE COMPLAINT**

**WELLS FARGO BANK, N.A., AND**
**DOES 1 THROUGH 100**

    Defendants.

IT IS HEREBY CONSENTED TO, STIPULATED AND AGREED, by and between Plaintiff John

Guenther and Defendant Wells Fargo Bank, N.A. that the time within which Plaintiff must serve

his Complaint is extended through and including April 30, 2019, in accordance with the Tolling

Agreement entered into by the parties.

This the 30th day of January, 2019.

Keith M. Weddington, NC State Bar No. 14352
keithweddington@parkerpoe.com
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
T: (704) 335-9035 F: (704) 335-9697
*Attorney for Defendant Wells Fargo Bank, N.A.*

Michelle Gessner, NC State Bar No. 26590
michelle@mgessnerlaw.com
Law Offices of Michelle Gessner
435 East Morehead Street
Charlotte, North Carolina 28202
T: (704) 234-7442 F: (980) 206-0286
*Attorney for Plaintiff John E. Guenther*

PPAB 4538353v1  1

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-19826

JOHN E. GUENTHER,

    Plaintiff,

v

WELLS FARGO BANK, N.A., AND
DOES 1 THROUGH 100

    Defendants.

STIPULATION FOR
EXTENSION OF TIME
TO FILE COMPLAINT

IT IS HEREBY CONSENTED TO, STIPULATED AND AGREED, by and between Plaintiff John

Guenther and Defendant Wells Fargo Bank, N.A. that the time within which Plaintiff must serve

his Complaint is extended through and including May 30, 2019, in accordance with the Tolling

Agreement entered into by the parties.

This the 30th day of April, 2019.

Keith M. Weddington, NC State Bar No. 14352
keithweddington@parkerpoe.com
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
T: (704) 335-9035 F: (704) 335-9697
*Attorney for Defendant Wells Fargo Bank, N.A.*

Michelle Gessner, NC State Bar No. 26590
michelle@mgessnerlaw.com
Law Offices of Michelle Gessner
435 East Morehead Street
Charlotte, North Carolina 28202
T: (704) 234-7442 F: (980) 206-0286
*Attorney for Plaintiff John E. Guenther*

1

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

File No. 18-CVS-19826
Film No.

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| JOHN E GUENTHER | **DELAYED SERVICE** |
| **VERSUS** | **OF** |
| Name Of Defendant | **COMPLAINT** |
| WELLS FARGO BANK, N.A. and DOES 1 through 100 | G.S. 1A-1, Rules 3 & 4 |

| TO: | TO: |
|---|---|
| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| Wells Fargo Bank, National Association 2626 Glenwood Avenue, Suite 550 Raleigh, NC 27608 | |

You are being served with a copy of the complaint in this action, the delayed filing of which was ordered when the summons was issued. You must:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or the plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or the plaintiff's attorney or by mailing a copy to one of them at his/her last known address.

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date 06-10-2019 | Time 3:07 | ☐ AM ☒ PM |
|---|---|---|---|
| L. Michelle Gessner The Law Offices of Michelle Gessner 435 East Morehead Street Charlotte                    NC   28202 | Signature | | |
| | ☐ Deputy CSC | ☐ Assistant CSC | ☐ Clerk Of Superior Court |

AOC-CV-103, Rev. 1/10
© 2010 Administrative Office of the Courts

Original File   Copy-Each Defendant   Copy-Attorney/Plaintiff
(Over)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **RETURN OF SERVICE** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

I certify that this Document and a copy of the Complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of this Document and Complaint.

☐ By leaving a copy of this Document and Complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Document and Complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service Accepted By Defendant

| Date Accepted | Time Served ☐ AM ☐ PM | Signature |
|---|---|---|

☐ Other Manner Of Service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of this Document and Complaint.

☐ By leaving a copy of this Document and Complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Document and Complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service Accepted By Defendant

| Date Accepted | Time Served ☐ AM ☐ PM | Signature |
|---|---|---|

☐ Other Manner Of Service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Date Received | Name Of Sheriff |
|---|---|---|
| Paid By | Date Of Return | County |
|  |  | Deputy Sheriff Making Return |

AOC-CV-103, Side Two, Rev. 1/10
© 2010 Administrative Office of the Courts

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE **FILED**
COUNTY OF MECKLENBURG       SUPERIOR COURT DIVISION
                               18 -CVS-19826    2019 MAY 30 · A 10: 55

MECKLENBURG CO., C.S.C.

BY _____

| | |
|---|---|
| JOHN E. GUENTHER, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **VERIFIED COMPLAINT** |
| | ) |
| WELLS FARGO BANK, N.A., and Does | ) |
| 1 through 100, | ) |
| | ) |
| Defendant. | ) |

Plaintiff John E. Guenther ("Plaintiff" or "Guenther"), individually, brings this action

against Wells Fargo Bank, N.A., a National Banking Association ("Wells Fargo"), and fictitious

Defendants Does 1 through 100, and alleges the following:

## THE PARTIES

1.   Plaintiff is a resident of Charlotte, Mecklenburg County, North Carolina.

2.   Wells Fargo is a National Banking Association with its headquarters in San

Francisco, California.

3.   Plaintiff does not have information regarding the true names and identities of the

Defendants sued as Does 1 through 100, but Plaintiff is informed and believes that each of the

Doe Defendants is an individual, subsidiary, affiliate, or agent who is individually responsible

and liable to some extent for the conduct alleged herein.

4.   Plaintiff therefore sues Does 1 through 100 as fictitious parties until their true

names and identities are discovered, at which time Plaintiff will amend this Complaint to

correctly name those Defendants.

## JURISDICTION AND VENUE

5.    Venue and jurisdiction are proper in this Court.

6.    The amount in controversy exceeds $25,000.

7.    Plaintiff has exhausted all administrative remedies, if any, prior to filing this lawsuit.

## FACTUAL ALLEGATIONS

8.    Plaintiff was employed by Wells Fargo, then First Union, in January of 1991.

9.    Plaintiff was part of the Specialized Industries Division where he became a VP-Relationship Manager for the Insurance Finance Group.

10.    In 1997, Plaintiff was recruited to join FUNB's Capital Markets Group, where he worked for the next eight years in Derivatives Sales.

11.    In 2005, Plaintiff was promoted to lead Wachovia's Middle Market Rates team.

12.    In early 2007, Plaintiff was promoted to head Middle Market Sales for Rates and Foreign Exchange nationwide.

13.    After the merger, Plaintiff became the East Coast Regional Sales Manager for Corporate Foreign Exchange.

14.    In 2011, along with his regional responsibilities, Plaintiff was asked to lead the Foreign Exchange Large Corporate business nationwide.

15.    Plaintiff's goal in 2011 was to double revenue in five years, and in that timeframe, Wells Fargo increased Large Corporate Foreign Exchange revenue from $75MM to over $155MM.

16.    During his tenure with the bank, Plaintiff had been recruited or promoted five times as a result of his work ethic, leadership, drive to succeed, and integrity.

2

17. Plaintiff's year end evaluations since 2010 were consistently above or significantly above all key objectives.

18. Plaintiff never had any disciplinary issues.

19. Plaintiff had excellent relationships with his clients, fellow capital markets colleagues and management as well as the bankers he supported.

20. In addition to his work with Wells Fargo, Plaintiff was very involved in community support.

21. Plaintiff is currently on the Board of Trustees at Trinity Episcopal School in Charlotte, North Carolina and is the Chair of the Development Committee.

22. Plaintiff successfully completed a $13 million Capital Campaign which will endow scholarships for underprivileged kids in Charlotte to attend Trinity.

23. Plaintiff was also the Board Chair of the Johnston YMCA in Charlotte, North Carolina from 2012-2014 and was on the board for seven years, a reflection of the confidence people have in his ability to lead and to create positive outcomes for others.

24. At the time of the events and circumstances alleged in this Complaint, the following individuals were employed by Wells Fargo or related entities:

a. Sara Wardell-Smith – Head of Foreign Exchange Sales and Trading (San Francisco)

b. Richard Yorke – Head of International Division, Wardell-Smith's boss (San Francisco)

c. Tim Sloan – later promoted to CEO, Yorke's boss (Los Angeles)

d. Rob Engel – Co-Head of Investment Banking (Charlotte)

e. Walter Dolhare – Co-head of Wells Fargo Securities (Charlotte)

f. Bob Gotelli – Head of Foreign Exchange Sales, reported to Wardell-Smith (San Francisco)

g. Simon Fowles – Head of Foreign Exchange Trading, reported to Wardell-Smith

3

(San Francisco)

h. Mike Schaufler – Chief Spot Dealer, reported to Fowles (San Francisco)

i. David Weiss – Foreign Exchange Salesperson, reported to Guenther (San Francisco)

25. At the time of the events and circumstances alleged in this Complaint, Guenther was employed as Regional Sales Manager and Head of Large Corporate Foreign Exchange Sales, reported to Bob Gotelli, and worked in Charlotte.

26. On August 22, 2014, Rob Engel informed Guenther and Bob Gotelli about "Project Red," a potential transaction by which Burger King, backed by a Brazilian financial sponsor and Warren Buffet, would acquire Tim Horton's, a Canadian restaurant chain, for approximately $12 Billion. ("Burger King Deal" or "Deal")

27. Rob Engel wanted to position Wells Fargo for the foreign exchange surrounding Burger King's need to convert US Dollars to Canadian Dollars in executing the transaction.

28. As Wells Fargo's plans to pitch the Deal progressed, it was determined that Guenther's subordinate, David Weiss, would lead the Foreign Exchange process and interface with Burger King during The Burger King Deal.

29. As David Weiss was pitching the Deal, he was keeping Guenther updated, and Guenther in turn was reporting back to Bob Gotelli, who was reporting back to Sara Wardell-Smith, Simon Fowles, and Richard Yorke.

30. The Burger King Deal was an extremely large transaction, and senior management had to evaluate trading and risk-management implications of the deal, as well as obtain credit approvals in a short time-frame if Wells Fargo won the deal.

4

31. Wells Fargo won the mandate for the purchase of approximately CAD 4.3 Billion, the equivalent of approximately $4 Billion, which was the largest mandate won by Wells Fargo Foreign Exchange Sales and Trading in the bank's history.

32. The Burger King Deal was being monitored closely by Wells Fargo's senior leadership, including Tim Sloan, Richard Yorke, and Rob Engel, among others.

33. Before August 27, 2014 Guenther, assuming Wells Fargo would win the mandate, called Bob Gotelli to abdicate his supervisory role of David Weiss for The Burger King Deal for several reasons, including:

    a. David Weiss and Bob Gotelli were co-located on the sales desk in San Francisco;

    b. Gotelli would be supervising Weiss because of the size of the deal;

    c. Gotelli was the Head of Foreign Exchange Sales and Guenther's supervisor, so having him supervise David Weiss in person made for better controls;

    d. The Trading Desk was also located in San Francisco and Simon Fowles would be supervising the trading execution of Mike Schaufler;

    e. Sara Wardell-Smith was also located on that desk and would be supervising Gotelli and Fowles and the execution of the trade since it was the largest position ever traded by her group;

    f. Guenther was located in Charlotte and had no access to trade blotters, real-time trading information or real-time client discussions; and

    g. Guenther's involvement would be superfluous as Head of Foreign Exchange, Head of Foreign Exchange Sales and the Head of Foreign Exchange Trading were already involved and supervising on the desk there.

34. Gotelli agreed to assume supervisory responsibility for Weiss for purposes of The Burger King Deal.

35. On or about August 27, 2014, after getting the mandate from Burger King, the Wells Fargo San Francisco Foreign Exchange Sales Team instructed the Wells Fargo Foreign Exchange Trading desk to sell $4 Billion and buy Canadian Dollars for Burger King as part of the $12 Billion acquisition of Tim Hortons.

5

36.     The Burger King Deal was the largest Foreign Exchange transaction in Wells Fargo history, hence there was heightened sensitivity to the handling of The Burger King Deal throughout the wholesale bank.

37.     There was only four (4) business days between Guenther learning of The Burger King Deal until the Deal was executed.

38.     The Burger King Deal was structured so that the customer, Burger King, was to be quoted an "at-worse" price on the entire Four Billion with a 50/50 split between Wells Fargo and Burger King on any improvement above the "at-worst" price. This ensured the customer was guaranteed a firm price for the full amount of the Burger King Deal, along with a potential for improvement should the final average price be better than the initial at-worst price.

39.     Sara Wardell-Smith, who at the time was the Global Head of Foreign Exchange Trading and Sales Group for Wells Fargo, and worked in San Francisco, California, was the Wells Fargo employee with ultimate responsibility for supervising the execution and risk management of the entire transaction for the Burger King Deal.

40.     Wardell-Smith was ultimately responsible for all Wells Fargo Foreign Exchange transactions and trades.

41.     Upon information and belief, Sara Wardell-Smith and her boss, Richard Yorke, and other Wells Fargo senior management, including CEO Tim Sloan, were fully informed of exactly how much revenue was generated on the Burger King Deal.

42.     Upon information and belief, the Burger King Deal resulted in roughly $7 Million Dollars of revenue to the Wells Fargo Foreign Exchange Sales and Trading Group.

43.     On or about August 27, 2014, Guenther dialed into a twenty to twenty-five-minute meeting regarding the Burger King transaction.

6

44. Upon information and belief, the other persons in the meeting included Bob Gotelli, David Weiss, Simon Fowles, and Mike Schaufler, all in a conference room in San Francisco, while Guenther was on the phone from Charlotte. During the meeting, the head trader, Mike Schaufler, provided the average rate of the execution. The finalized customer rate was not set during the meeting.

45. During the August 27th meeting, Guenther spoke very little. He had little to no involvement in the execution of the trade. He had difficulty following the discussion due to the lack of detailed information regarding the execution of the transaction at his disposal in Charlotte.

46. Guenther's role in the transaction was limited for several reasons, first, that the entirety of the events surrounding The Burger King Deal occurred in San Francisco, California, where Wells Fargo is headquartered, and Guenther worked in Charlotte, North Carolina.

47. Guenther had relinquished supervision of his team member, David Weiss, who was involved in The Burger King Deal, to Bob Gotelli, who was the head of Wells Fargo Foreign Exchange Sales Group, because Weiss and Gotelli were both located in San Francisco and were involved in the details surrounding The Burger King Deal.

48. In the Fall of 2016, Guenther was informed that the Department of Justice was investigating the Burger King Deal.

49. At no time prior to September 2017, did Wells Fargo ever inform Guenther that he, or others, had violated any policies or done anything incorrectly with the Burger King Deal.

50. In early September 2017, Guenther was called into a meeting in Charlotte with Walter Dolhare and other Wells Fargo senior management who played a recording of the August 27, 2014 meeting, and questioned Guenther about the meeting.

7

51.     On October 16, 2017, Walter Dolhare and Rob Engel then terminated Guenther by video-conference. Bob Gotelli, Simon Fowles, and Mike Schaufler were terminated that day as well.

52.     Later in the day on October 16, 2017, subsequent to the actual termination, Guenther was told by Human Resources representative Katrina Barnett that he was terminated for a violation of policy.

53.     Guenther asked Barnett to identify the particular policy he had violated.

54.     Barnett never provided a response to Guenther's request and did not identify any specific policy that Guenther violated.

55.     Instead of being terminated, Wardell-Smith was transferred to manage a different banking team in an area where she had no experience but kept her Executive Vice President and Managing Director titles intact including her compensation and benefits.

56.     Numerous reports in the media stated that Guenther, Michael Schaufler, Simon Fowles, and Bob Gotelli were fired for "cause" related to a transaction involving a client.

57.     Upon information and belief, the Wall Street Journal first reported on or about October 20, 2017, that Wells Fargo fired the four bankers in relation to an investigation by federal regulators as well as an internal investigation.

58.     Other media sources, including the Charlotte Observer, soon followed, citing the Wall Street Journal and other sources.

59.     In October 2017, the Charlotte Observer reported several times that Wells Fargo fired four foreign-exchange bankers for conduct "related to a single client transaction, and the customer is aware of the situation," citing the Wall Street Journal and anonymous sources.

8

60. Despite constant searching, Guenther has been unable to find comparable employment as a direct result of Wells Fargo falsely reporting that he and the others were fired for cause.

61. Several prospective employers have expressly told Guenther that he was not being hired because of the negative publicity surrounding his termination from Wells Fargo.

62. Guenther has repeatedly requested to be reinstated to his former position by Wells Fargo and for Wells Fargo to recant the false information published; however, Wells has continuously refused.

### FIRST CAUSE OF ACTION
#### (Title VII – Discrimination on the Basis of Sex)

63. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

64. Plaintiff, along with Michael Schaufler, Simon Fowles, and Bob Gotelli are males who were all terminated for their alleged involvement in The Burger King Deal.

65. David Weiss is also a male who was terminated prior to Guenther, Schaufler, Fowles, and Gotelli apparently for his role in The Burger King Deal.

66. Plaintiff's role in The Burger King Deal was extremely limited, because he was located in Charlotte, North Carolina, while The Burger King Deal was being handled in San Francisco, California, the headquarters of Wells Fargo.

67. Plaintiff's role was further limited, because he had relinquished any supervisory authority over David Weiss, his subordinate, to Bob Gotelli, for purposes of The Burger King Deal.

9

68.     While male employees Guenther, Michael Schaufler, Simon Fowles, and Bob Gotelli were terminated for alleged policy violation, Sara Wardell-Smith, the Global Head of the Foreign Exchange Trading and Sales Group, retained her employment with Wells Fargo.

69.     While male employees Guenther, Michael Schaufler, Simon Fowles, and Bob Gotelli were terminated, Wardell-Smith merely was transferred to another division, retaining her seniority, benefits, salary, bonuses, stock options, and other compensation.

70.     While male employees Guenther's, Michael Schaufler's, Simon Fowles's, and Bob Gotelli's reputations and careers were irreparably damaged by statements that they were fired for "cause," purportedly for the 2014 transaction, Wardell-Smith's reputation remained intact as it was publicly reported that she simply made a lateral move to a different department at Wells Fargo.

71.     Wardell-Smith was ultimately responsible for The Burger King Deal as the Head of the Foreign Exchange Sales and Trading Group, managing Fowles and Gotelli, and was directly involved in The Burger King Deal, having direct management responsibility for The Burger King Deal.

72.     Despite her ultimate responsibility for The Burger King Deal, Wardell-Smith was not terminated and did not suffer the adverse consequences to her career and reputation that Guenther, Schaufler, Fowles, Gotelli, and Weiss suffered.

73.     Guenther was unlawfully discriminated against on the basis of his gender by Wells Fargo, its representatives and employees, and Does 1 through 100, when he was terminated at the same time as male employees Michael Schaufler, Simon Fowles, and Bob Gotelli, with no valid reason given, while Wardell-Smith, a female employee, was retained and moved to another position with Wells Fargo.

10

74. Guenther filed a Charge of Discrimination with the EEOC on or about April 19, 2018, alleging discrimination on the basis of sex and gender in violation of Title VII of the Civil Rights Act of 1964.

75. In March 2019, the EEOC issued a Notice of Right to Sue letter.

76. Guenther has suffered damages because of Defendant Wells Fargo's and Does 1 through 100's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, in an amount to be determined by a jury.

## SECOND CAUSE OF ACTION
### (Wrongful Discharge in Violation of North Carolina's Public Policy)

77. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

78. Upon information and belief, Burger King's concerns about the fairness of The Burger King Deal led to an internal investigation and to federal regulators, including the Department of Justice, scrutinizing The Burger King Deal and the practices of Wells Fargo's Foreign Exchange Trading and Sales Group.

79. Wells Fargo was motivated by an unlawful reason and purpose—to avoid the scrutiny of federal regulators—in violation of the public policy of North Carolina when it terminated Guenther, because Guenther was not directly involved in the execution of The Burger King transaction and had no responsibility for execution of The Burger King transaction, having relinquished his supervisory authority over David Weiss.

80. Wells Fargo discriminated against Guenther when it fired Guenther, a male employee whose involvement in the execution of The Burger King transaction was negligible, along with four other male employees, and retained Wardell-Smith, a female employee who was ultimately responsible for The Burger King Deal.

11

81.    Wells Fargo's conduct in discriminating against Guenther violated N.C. Gen. Stat. § 143-422.2, the North Carolina statute stating that it is the public policy of North Carolina not to discriminate, and therefore Wells Fargo's termination further constituted a wrongful discharge in violation of North Carolina's public policy.

82.    Wells Fargo's public policy violations were causally connected to the adverse employment action, the termination of Plaintiff.

83.    Wells Fargo terminated Plaintiff for reasons and purposes that violate the public policies of North Carolina.

84.    Wells Fargo's actions, as described above, were willful and showed a reckless and wanton disregard of Guenther's rights and interests under North Carolina public policy, warranting the imposition of punitive damages.

85.    Wells Fargo is liable for the conduct complained of herein and is subject to injunctive relief.

86.    Wells Fargo is liable to Plaintiff for all damages resulting from its wrongful discharge of Plaintiff in violation of public policy in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Defamation – Libel Per Se)

87.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

88.    Upon information and belief, Wells Fargo and Wells Fargo's employees and representatives published statements to individuals in the banking community and financial industry that Jed Guenther as well as Michael Schaufler, Simon Fowles, and Bob Gotelli, were terminated for "cause."

12

89. Wells Fargo's and its employees' and representatives' published statements were libel per se, in that they were susceptible of only one meaning and were false.

90. Wells Fargo and Wells Fargo's Human Resources Department identified no policy Plaintiff violated allegedly resulting in his termination, so the statement that Plaintiff was terminated for "cause" is false on its face and as a matter of law.

91. Upon information and belief, Wells Fargo and Wells Fargo's employees and representatives published other false information to individuals in the banking community and financial industry regarding Jed Guenther as well as Michael Schaufler, Simon Fowles, Bob Gotelli, and David Weiss.

92. Upon information and belief, Wells Fargo and Wells Fargo's employees and representatives published information to journalists, reporters, and other individuals working in the media that Jed Guenther as well as Michael Schaufler, Simon Fowles, and Bob Gotelli, were terminated for "cause."

93. Wells Fargo's and its employees' and representatives' published statements to journalists, reporters, and other individuals working in the media were libel per se, in that they were susceptible of only one meaning and were false.

94. Wells Fargo and Wells Fargo's Human Resources Department identified no policy Plaintiff violated allegedly resulting in his termination, so the published statement to journalists, reporters, and other individuals working in the media that Plaintiff was terminated for "cause" is false on its face and as a matter of law.

95. Upon information and belief, Defendants Does 1 through 100 published statements to individuals in the banking community and financial industry that Jed Guenther as well as Michael Schaufler, Simon Fowles, and Bob Gotelli, were terminated for "cause."

13

96.     Defendants Does 1 through 100's published statements were libel per se, in that they were susceptible of only one meaning and were false.

97.     Wells Fargo and Wells Fargo's Human Resources Department identified no policy Plaintiff violated or allegedly violated resulting in his termination, so the statement by Defendants Does 1 through 100 that Plaintiff was terminated for "cause" is false on its face and as a matter of law.

98.     Upon information and belief, Defendants Does 1 through 100 published information to journalists, reporters, and other individuals working in the media that Jed Guenther as well as Michael Schaufler, Simon Fowles, and Bob Gotelli, were terminated for "cause."

99.     Defendants Does 1 through 100's published statements were libel per se, in that they were susceptible of only one meaning and were false.

100.    Wells Fargo and Wells Fargo's Human Resources Department identified no policy Plaintiff violated allegedly resulting in his termination, so Defendant Does 1 through 100's published statement to journalists, reporters, and other individuals working in the media that Plaintiff was terminated for "cause" is false on its face and as a matter of law.

101.    Upon information and belief, Defendants Does 1 through 100 published other false information to journalists, reporters, and individuals working in the media regarding Jed Guenther as well as Michael Schaufler, Simon Fowles, Bob Gotelli, and David Weiss.

102.    As a matter of law, the false, published statements by Wells Fargo and its employees and representatives and Does 1 through 100 injured Guenther in his reputation, office, trade, and occupation.

14

103.    Upon information and relief, the statements of Defendant Does 1 through 100 were not privileged in that they were made with malice and in bad faith. Upon information and belief, Defendant Does 1 through 100 made the statements to try to appease the DOJ and avert any further investigation.

104.    Defendants are liable to Plaintiff for all damages arising from Defendant's defamatory published statements regarding Plaintiff consisting of libel per se, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (In the Alternative - Defamation – Libel Per Quod)

105.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

106.    The defamatory statements referenced in Paragraphs 56-59 if not defamatory on their face, are defamatory when considered in light of innuendo and the circumstances surrounding The Burger King Deal and the media reports about The Burger King Deal.

107.    The innuendo and circumstances include the fact that the client apparently had complained about the fairness and compensation of The Burger King Deal, federal regulators were investigating The Burger King Deal, and Wells Fargo was facing negative reports in the press and media related to practices and policies in other divisions of the bank.

108.    Thus, when Wells Fargo and its employees and representatives, and Does 1 through 100, made statements to individuals in the banking and financial industry, and to journalists, reporters, and other individuals in the media, that Guenther was terminated for "cause," this suggested Guenther had culpability for any negative implications to the client as a result of The Burger King Deal and had violated federal or state law.

15

109.    Upon information and relief, the statements of Defendant Does 1 through 100 were not privileged in that they were made with malice and in bad faith. Upon information and belief, Defendant Does 1 through 100 made the statements to try to appease the DOJ and avert any further investigation.

110.    Plaintiff suffered special damages as a result of Defendant Wells Fargo and Does 1 through 100's defamatory, published statements, in that Plaintiff did not receive his bonus and other compensation and has not been able to obtain employment in the banking and financial industry, his field of expertise and his career of almost twenty-seven years.

### FIFTH CAUSE OF ACTION
### (Defamation – Slander Per Se)

111.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

112.    Defendants Wells Fargo, its representatives and employees, and Does 1 through 100, made spoken comments to persons working in the banking and financial industry that prejudiced Plaintiff in his reputation, office, trade, and occupation.

113.    Defendants Wells Fargo, its representatives and employees, and Does 1 through 100, made spoken comments to persons working in the banking and financial industry that have damaged Plaintiff's livelihood and prevented him from obtaining employment in the banking and financial industry, his field of expertise and his career of almost twenty-seven years.

114.    Defendants Wells Fargo, its representatives and employees, and Does 1 through 100, made spoken comments to journalists, reporters, and other persons working in the media that prejudiced Plaintiff in his reputation, office, trade, and occupation.

115.    Defendants Wells Fargo, its representatives and employees, and Does 1 through 100, made spoken comments to journalists, reporters, and other persons working in the media

16

that have damaged Plaintiff's livelihood and prevented him from obtaining employment in the banking and financial industry, his field of expertise and his career of almost twenty-seven years.

116. The statements uttered by Defendants Wells Fargo, its representatives and employees, and Does 1 through 100, were false.

117. The Defendants' spoken comments were published to and understood by third persons.

118. The Defendants' spoken comments and verbal statements included the statement that Guenther was fired for "cause," when in fact, no policy reason was given for Guenther's termination and no policy violation was identified, and the comments were thus false on their face and as a matter of law.

119. The Defendants' spoken comments and verbal statements were susceptible of only one meaning and were false, and thus constitute slander per se.

120. Upon information and relief, the statements of Defendant Does 1 through 100 were not privileged in that they were made with malice and in bad faith. Upon information and belief, Defendant Does 1 through 100 made the statements to try to appease the DOJ and avert any further investigation.

121. Defendants Wells Fargo, its representatives and employees, and Does 1 through 100, are liable to Plaintiff for all damages arising from Defendants' defamatory verbal remarks regarding Plaintiff consisting of slander per se, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
(In the Alternative - Defamation – Slander Per Quod)

122. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

17

123. The defamatory remarks referenced in Paragraphs 56-59, if not defamatory on their face, are defamatory when considered in light of innuendo and the circumstances surrounding The Burger King Deal and the media reports about The Burger King Deal.

124. The innuendo and circumstances include the fact that the client apparently had complained about the fairness and compensation of The Burger King Deal, federal regulators were investigating The Burger King Deal, and Wells Fargo was facing negative reports in the press and media related to practices and policies in other divisions of the bank.

125. Thus, when Wells Fargo and its employees and representatives, and Does 1 through 100, made spoken comments and verbal statements to individuals in the banking and financial industry, and to journalists, reporters, and other individuals in the media, that Guenther was terminated for "cause," this suggested Guenther had culpability for any negative implications to the client as a result of The Burger King Deal and had violated federal or state law.

126. Upon information and relief, the statements of Defendant Does 1 through 100 were not privileged in that they were made with malice and in bad faith. Upon information and belief, Defendant Does 1 through 100 made the statements to try to appease the DOJ and avert any further investigation.

127. Plaintiff suffered special damages as a result of Defendant Wells Fargo and Does 1 through 100's defamatory, published spoken comments and verbal statements, in that Plaintiff did not receive his bonus and other compensation and has not been able to obtain employment in the banking and financial industry, his field of expertise and career of almost twenty-seven years.

### SEVENTH CAUSE OF ACTION
#### (Breach of Express and/or Implied Contract)

128. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

18

129. Plaintiff and Wells Fargo had either express or implied contracts that Defendant would pay Plaintiff a bonus for 2017 as well as compensation from long term equity grants previously provided to Plaintiff. Plaintiff's 2017 annual bonus incentive was $700,000 and Defendant achieved 80% of performance to plan in 2017. Plaintiff also had long-term equity grants which were issued on February 25, 2014 – 2605 shares, February 25, 2015 – 2168 shares, February 23, 2016 – 2495 shares, and February 28, 2017 – 3,456 shares.

130. Plaintiff earned his bonus, which was vested and his long-term equity, and Wells Fargo terminated Plaintiff and failed to pay the bonus and long-term equity to which he was entitled.

131. Wells Fargo is liable to Plaintiff for all damages arising from its breach of express or implied contracts in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
#### (Unjust Enrichment)

132. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

133. Wells Fargo was unjustly enriched by its wrongful termination of Plaintiff, in that it retained the bonus earned by Plaintiff, along with other wages, benefits, and compensation lawfully owed to Plaintiff.

134. Wells Fargo is liable to Plaintiff for the amount by which it was unjustly enriched in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
#### (Equitable Estoppel)

135. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

19

136. Approximately two years went by from the time of The Burger King Deal until apparent complaints from the client led to the investigation by the Justice Department.

137. During this time, Wells Fargo neither made any complaints nor expressed any concern about Plaintiff's role in The Burger King Deal.

138. Plaintiff received outstanding performance reviews during the three-year period and no negative performance evaluations.

139. After the Justice Department began investigating potential wrongdoing by Wells Fargo, Wells Fargo terminated Plaintiff purportedly for his involvement in The Burger King Deal, without providing any stated valid reason or identifying any policy that Plaintiff allegedly violated.

140. Wells Fargo was equitably estopped from denying Plaintiff earned compensation on the basis of false allegations of purported misconduct in connection with The Burger King Deal, which Plaintiff denies, that allegedly occurred three years prior to his termination.

141. Wells Fargo's refusal to pay Plaintiff his bonus and wages was impermissible, because Wells Fargo was estopped from denying Plaintiff compensation which he had earned and to which was entitled for false allegations of purported misconduct years prior.

142. Defendant is liable to Plaintiff for all wages, bonuses, and other compensation to which Plaintiff was entitled and which Defendant failed to pay Plaintiff when he was terminated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

(1) A judgment awarding Plaintiff damages for Defendant's violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, earned

20

bonuses and vested and unvested stock and any other compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act of 1964;

(2)     A judgment awarding Plaintiff damages for Defendant's wrongful termination of Plaintiff in violation of North Carolina's public policy, including attorneys' fees, costs, and punitive damages;

(3)     A judgment awarding Plaintiff damages for Defendant's defamatory remarks about Plaintiff consisting of libel per se, or in the alternative, libel per quod;

(4)     A judgement awarding Plaintiff damages for Defendant's defamatory remarks about Plaintiff consisting of slander per se, or in the alternative, slander per quod;

(5)     A judgment awarding Plaintiff damages for Defendant's breach of express or implied contract;

(6)     A judgment awarding Plaintiff damages for Defendant's unjust enrichment;

(7)     A judgment finding that Defendant was equitably estopped from terminating the Plaintiff and awarding Plaintiff damages for Defendant's wrongful termination;

(8)     An Order that the costs of this action be taxed against Defendant;

(9)     An Order awarding Plaintiff reasonable attorneys' fees;

(10)    Pre-judgment and post-judgment interest calculated at the prevailing legal rate;

(11)    An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

21

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 - CVS - 19826

JOHN E. GUENTHER,

        Plaintiff,

v.

WELLS FARGO BANK, N.A., and DOES
1 through 100,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**VERIFIED COMPLAINT**

John E. Guenther, being duly sworn, deposes and says that he has read the foregoing **VERIFIED COMPLAINT,** and is familiar with the contents thereof, that same is true of his own knowledge except as to those matters as may therein be alleged upon information and belief and as to those matters, he believes them to be true.

                                   JOHN E. GUENTHER

Sworn to and subscribed before me, this

_28th_ day of _May_ , 2019.

_____
Notary Public
My Commission Expires: _February 9, 2022_



23

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury in this action for all issues of fact and claims so triable.

*L. Michelle Gessner*

L. Michelle Gessner, NC State Bar No. 26590
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Telephone: (704) 234-7442
E-Mail: michelle@mgessnerlaw.com

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date she served a copy of the foregoing

**VERIFIED COMPLAINT** upon the party listed below by depositing a copy thereof in the

United States mail in Charlotte, North Carolina, postage pre-paid and addressed as follows:

> Keith Weddington
> Parker Poe
> 401 South Tryon Street, Suite 3000
> Charlotte, North Carolina 28202
> 704-335-9035
> keithweddington@parkerpoe.com
>
> Attorney for Wells Fargo

This the 30th day of May, 2019.

L. Michelle Gessner, NC Bar No. 26590
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Phone: (704) 234-7442
michelle@mgessnerlaw.com

24

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
|---|---|

**COUNTY OF** MECKLENBURG

RECEIVED

*Attorney Name*
Keith M. Weddington

*Address*
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 3000
Charlotte NC 28202

JUN 2 8 2019

CASEFLOW MANAGEMENT DIVISION
Mecklenburg County, North Carolina

## SECURE LEAVE FORM

*Telephone No.*
704.335.9035

*State Bar Number*
14352

*Rule 26; Rule 33A Rules of Appellate Procedure*

**Notice:** *Secure Leave shall consist of one or more calendared weeks, but in any event shall not consist of more than three (3) calendared weeks during any calendar year.*

### Statement of Attorney

I hereby certify that the secure leave period designated below is not being designated for the purpose of delaying, hindering or interfering with the timely disposition of any matter in any pending action or proceeding.

I further certify that no action or proceeding in which I have entered an appearance has been scheduled, Peremptorily set or noticed for trial hearing, deposition or other proceeding during the designated leave period.

### Designated Secure Leave Dates

Indicate the dates you are noticing as Secure Leave Dates

| Wednesday | *Beginning Date* October 9, 2019 | Until Wednesday | *Ending Date* October 23, 2019 |
|---|---|---|---|

*Indicate any previously designated Secure Leave periods during the current calendar year that have previously been designated pursuant to Rule 26 and Rule 3A of the Rules of Appellate Procedure:*

| *Beginning Date* N/A | *Ending Date* N/A |
|---|---|

*This Secure Leave Notification must be filed not later than ninety (90) days before the beginning of the secured leave period and before any trial, hearing deposition or other matter has been regularly scheduled, peremptorily set or noticed for a time during the designated secure leave period.*

| *Date* June 28, 2019 | *Attorney Signature* |
|---|---|

This form is required to be filed in each of the following offices if the attorney has entered an appearance of record as follows: *(please check the offices filed.)*

☐ District Attorney *[Criminal cases]*  ☒ Trial Court Administrator *[Civil cases]*

☐ Clerk of Superior Court *[Special Proceeding/Estate Cases]*  ☐ Family Court Director *[Domestic/Juvenile cases]*

**NOTICE TO ATTORNEY:** Should any matter be set during your Secure Leave Period, you are required to service notice on the official calendaring the matter, and the parties of record to the matter. This Notice shall contain the following: (1) A copy of this form (2) The case number and name of case set (3) A certificate of service.

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing SECURED LEAVE FORM was served via U.S. Mail upon the following:

                Fred B. Monroe, Esq.
                James, McElroy & Diehl, P.A.
                525 North Tryon Street, Suite 700
                Charlotte, North Carolina 28202

                G. Bryan Adams, III
                NC State Bar No. 17307
                Van Hoy, Reutlinger, Adams & Dunn, PLLC
                737 East Boulevard
                Charlotte, North Carolina 28203

                L. Michelle Gessner, Esq.
                Law Offices of Michelle Gessner
                435 East Morehead Street
                Charlotte, North Carolina 28202

                Harold L. Kennedy, III, Esq.
                Harvey L. Kennedy, Esq.
                Kennedy, Kennedy, Kennedy & Kennedy, L.L.P.
                301 N. Main Street, Suite 2000
                Winston-Salem, NC 27101

                Robert A. Sar
                Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
                4208 Six Forks Road, Suite 1100
                Raleigh, NC 27609

This the 28th day of June, 2019.

                        Keith M. Weddington, NCSB No. 14352
                        Parker Poe Adams & Bernstein LLP
                        401 South Tryon Street, Suite 3000
                        Charlotte, North Carolina 28202
                        Telephone: 704.335.9035
                        Facsimile: 704.334.4706
                        Email: keithweddington@parkerpoe.com

FILED

**STATE OF NORTH CAROLINA**

**MECKLENBURG COUNTY** 2019 JUL -2 P 3: 02

MECKLENBURG CO., C.S.C.

BY_____

**GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**
**18-CVS-19826**

**JOHN E. GUENTHER,**

    **Plaintiff,**

v

**WELLS FARGO BANK, N.A., AND**
**DOES 1 THROUGH 100**

    **Defendants.**

**MOTION FOR**
**EXTENSION OF TIME**
**TO ANSWER OR OTHERWISE**
**RESPOND TO PLAINTIFF'S**
**COMPLAINT**

Pursuant to Rule 6 of the North Carolina Rules of Civil Procedure, Defendant Wells

Fargo Bank, N.A. ("Wells Fargo") hereby moves the Court for an Order extending by thirty (30)

days the time within which to answer or otherwise respond to the Complaint of Plaintiff John E.

Guenther ("Plaintiff"). In support of this motion, Wells Fargo shows the following:

1.    Wells Fargo was served with Plaintiff's Summons and Complaint on June 14,

2019.

2.    Responsive pleadings are currently due for Wells Fargo on July 15, 2019.

3.    Wells Fargo requires additional time to prepare responses to Plaintiff's

Complaint.

WHEREFORE, Wells Fargo requests a thirty (30) day extension to respond to the

Complaint, to and including August 14, 2019.

This the 2nd day of July, 2019.

Keith M. Weddington, N.C. State Bar No. 14352
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
T: 704.335.9035
F: 704.334.4706
keithweddington@parkerpoe.com
*Attorney for Defendant Wells Fargo Bank, N.A.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT** was served via United States mail, first-class, postage prepaid, upon the following:

>Michelle Gessner
>Law Offices of Michelle Gessner
>435 East Morehead Street
>Charlotte, North Carolina 28202

This the 2nd day of July, 2019.

Keith M. Weddington, N.C. Bar No. 14352
keithweddington@parkerpoe.com
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
T: 704.335.9035
F: 704.334.4706
*Attorney for Defendant Wells Fargo Bank, N.A.*

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY



FILED
2019 JUL -2 P 3:02
MECKLENBURG CO., C.S.C.
BY_____

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-19826

JOHN E. GUENTHER,

    Plaintiff,

v

WELLS FARGO BANK, N.A., AND
DOES 1 THROUGH 100

    Defendants.

ORDER ON
MOTION FOR
EXTENSION OF TIME
TO ANSWER OR OTHERWISE
RESPOND TO PLAINTIFF'S
COMPLAINT

This matter is before the Court on the Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Upon consideration of the Motion and for other good cause shown, the Court hereby ORDERS that the Wells Fargo's Motion is GRANTED, and that the time for Wells Fargo to respond to Plaintiff's Complaint is hereby extended to, and including, August 14, 2019.

This the _____ day of July, 2019.

_____
Clerk of Superior Court